# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| 3 MARK ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ABRAMS-SCHILLER LIVING TRUST; JAMES ABRAMS, an individual; KELLY CRABB, an individual; and MORRISON FOERSTER, LLP,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:09CV780 DAK |
| JAMES ABRAMS, an individual;<br><br>Counterclaimant,<br><br>vs.<br><br>3 MARK ENTERTAINMENT, LLC, a Delaware limited liability company, TWO ROADS PRODUCTIONS, INC., a Colorado corporation, and MITCHELL A. DAVIS, an individual<br><br>Counterclaim Defendants. | |

This matter is before the court on (1) a Motion for Partial Summary Judgment filed by Defendant/Counterclaimant James Abrams ("Mr. Abrams"), successor-in-interest to

the Abrams-Schiller Living Trust,[1] Against 3 Mark Entertainment, LLC ("3 Mark"), and (2) Plaintiff 3 Mark's Motion for Partial Summary Judgment.  A hearing on the motions was held on September 8, 2010.  At the hearing, Mr. Abrams was represented by Milo Steven Marsden and Todd D. Weiler.  Plaintiff 3 Mark was represented by Joseph G. Pia.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to these motions.   Now being fully advised, the court renders the following Memorandum Decision and Order.

## I.  BACKGROUND

This case involves an alleged breach of contract.  Defendant/Counterclaimant Mr. Abrams is a retired executive.  In early 2000, he was introduced to Mitchell A. Davis ("Mr. Davis"), who is now one of the Counterclaim Defendants in this lawsuit.   Mr. Davis is an individual who has been involved in the film industry variously as a writer, director, and producer.  In late 1999, Mr. Davis formed 3 Mark, a single-purpose entity that was to function as the fundraising vehicle for the financing, production, and distribution of a film based on the missionary experiences of Elder John H. Groberg.   The motion picture was entitled *The Other Side of Heaven* (the "Film").  Mr. Abrams ultimately invested $800,000 in 3 Mark in exchange for a 10.9589 percent membership interest in the company.  Mr. Abrams' investment in 3 Mark is

---

[1] The Abrams-Schiller Living Trust is an estate planning trust that was dissolved in 2003 in connection with Mr. Abrams' divorce from his former wife.

not at issue in this lawsuit.

The Film was completed in approximately January of 2001. Mr. Davis and 3 Mark spent the rest of 2001 in an unsuccessful effort to find a distributor who would purchase the Film outright. By the end of the year, they were out of money. Without more money, the effort to get the Film distributed would have been over, and the Film would have been a total financial loss. In late January 2002, Mr. Davis approached Mr. Abrams for more money to continue the effort to get the Film distributed. Mr. Abrams ultimately agreed to loan 3 Mark $3 million to finance prints and ads ("P&A") to support a nationwide theatrical release of the Film, under the terms of a written promissory note. This loan is the subject of the present lawsuit.

Mr. Davis's brother-in-law, Van E. Haynie, an attorney, drew up a promissory note (the "Note"), and on March 11, 2002, 3 Mark executed the Note, and Mr. Abrams lent $3 million to 3 Mark. Under the terms of the Note, 3 Mark was required to do a number of things. In particular, for purposes of this motion, 3 Mark was required to repay the "entire outstanding balance of this Note, including all principal and any accrued interest and other charges that may be outstanding . . . not later than September 25, 2003." While 3 Mark has made sporadic payments on the Note, it failed to pay off the Note on September 25, 2003, as required. 3 Mark's last payment was made on October 27, 2008.

Between 2002 and 2007, Mr. Abrams and Mr. Davis undertook a number of other moviemaking projects. Mr. Abrams financed all of these projects, ultimately providing over $10 million in connection with Davis-conceived movies. None of these projects was financially successful. Eventually, Mr. Abrams's relationship with Mr. Davis became strained and

eventually broke down entirely.

On May 1, 2009, Mr. Abrams (through his counsel) sent a demand letter to Mr. Davis as Manager of 3 Mark, demanding payment of the Note in full. In response to this letter and certain other actions Mr. Abrams had taken to protect his interests, 3 Mark filed a pre-emptive lawsuit in this court, seeking to block enforcement of the Note. In its Complaint, 3 Mark seeks a declaration that the Note has not been breached or that Mr. Abrams is barred from enforcing it. The Complaint contains other claims as well. Mr. Abrams Answered the 3 Mark Complaint and also filed a Counterclaim.

In his instant motion, Mr. Abrams seeks partial summary judgment on his Counterclaim. Specifically, he asks the court, on the basis of the plain and unambiguous language of the Note, to:

(1) enter an order in Mr. Abrams' favor on Count 1 of Mr. Abrams' Counterclaim. This count alleges that 3 Mark breached the Note by failing to timely repay the "entire outstanding balance of this Note, including all principal, and any accrued interest and other charges that may be outstanding . . . not later than September 25, 2003";

(2) enter an order in Mr. Abrams' favor on those portions of Count 1 of the Complaint that seek a declaration that the Note has not been breached and that Mr. Abrams is barred from bringing a claim under the Note;

(3) enter a money judgment in favor of Mr. Abrams for all amounts due and owing under the Note, including principal, accrued interest, and Mr. Abrams' costs and attorneys' fees incurred in enforcing the obligations of 3 Mark under the Note.

On the other hand, 3 Mark, seeks summary judgment on the basis that Mr. Abrams' claim for breach of the Note is time-barred under the applicable Utah statute of limitations.

## II. DISCUSSION

According to Mr. Abrams, this action is a simple and straightforward breach of contract claim: He loaned $3 million to 3 Mark pursuant to a written Note, and 3 Mark defaulted on the Note by failing to pay the Note in full when due.

3 Mark opposes the motion, claiming that ambiguity in the contract, the conduct of the parties, and Abrams' express written emails modified the terms of the Note in such a way as to create genuine issues of material fact regarding the interpretation of the Note and intentions of the parties.

For example, 3 Mark claims that Mr. Abrams took a "pay as you can" attitude toward the Note and never asserted any claim for breach of contract when installments were late. It was only after his friendship with Mr. Davis deteriorated that Mr. Abrams decided to enforce the Note. 3 Mark also claims that the Note was hastily written and has multiple internal inconsistencies that make the introduction of extrinsic evidence a necessity. Moreover, 3 Mark argues that the Note was allowed to be vague and ambiguous on its face because the parties knew that their course of conduct would govern. The core intention of the parties, according to 3 Mark, was that, if 3 Mark generated money, it should pay on the Note, and if it did not generate money, no payment would be required. 3 Mark claims that Mr. Abrams always maintained that his goal was at most to receive his principal back in light of the fact that the other investors had not received any return whatsoever, and that the purpose of putting the funds up for promotion of

5

the Film was primarily done on the basis of furthering the mission of the Film. 3 Mark contends that the parties' true intentions are manifested in part by the fact that Mr. Abrams made no demands for payment for over five and a half (5½ years), even though the technical terms of the Note contained a maturity date of October 25, 2003. Mr. Abrams sent a demand letter to 3 Mark on May 1, 2009–only after his personal relationship with 3 Mark's Manager, Mr. Davis, deteriorated on other unrelated film projects.

3 Mark argues that the modified contract precludes summary judgment at this early stage in the proceedings, when there has been no exchange of documents under Rule 26(a), no answered discovery requests, and no depositions taken. In other words, 3 Mark argues that Mr. Abrams' motion for summary judgment is premature at this juncture.

3 Mark also contends that the Counterclaim for Breach of the Note is time-barred under the applicable Utah statute of limitations.[2] According to 3 Mark, a cause of action for breach of contract accrues on the date the breach is alleged to occur, and Mr. Abrams claims that 3 Mark breached the Note on September 25, 2003, when it failed to make the Balloon Payment that Mr. Abrams alleges was due on that date. Therefore, 3 Mark argues, Mr. Abrams' breach of contract claim accrued on September 25, 2003, and, under Utah law, Abrams was required to commence his lawsuit within six (6) years of that date. Therefore, 3 Mark contends, because Mr. Abrams

---

[2] The parties agree that, while the state law under which the contract was made (California) governs substantive issues, the law of the forum state controls procedural issues, such as the statute of limitations. Thus, the substantive laws of California govern the interpretation and enforcement of the Note, while the laws of Utah govern the procedural issues, such as statutes of limitation.

did not commence his breach of contract claim against 3 Mark until March 31, 2010 (more than 6 and ½ years after the claim accrued), Mr. Abrams' breach of contract claim is time-barred.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal Civ. Code § 1643. "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v. Superior Court*, 274, 799 P.2d 1253 (1990). "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id*. "If the language of a contract is clear and explicit, it governs." *Powerine Oil Co., Inc. v. Superior Court*, 118 P.3d 589 (2005).

In the instant case, the court finds that the language of the Note is clear and explicit, and the terms are not ambiguous. The court agrees with Mr. Abrams that 3 Mark breached the Note. 3 Mark does not dispute that Mr. Abrams loaned $ 3 million to 3 Mark pursuant to a written Note dated March 11, 2002. The Note expressly states that 3 Mark was required to repay all principal, interest, and other amounts owing on the Note by September 25, 2003, and the Note expressly states that interest will accrue on the principal balance at the rate of eight percent (8%) per annum if the Note is in default. Moreover, there is no dispute that the Note specifies that "no delay or omissions on the part of [Mr. Abrams] in exercising any rights under, or failure to insist upon prompt compliance with the terms of this Note shall operate as a waiver of any right hereunder." 3 Mark does not dispute that it failed to pay the Note in full on September 25, 2003 or that it made its last payment on October 27, 2008.

3 Mark has not created a genuine issue of material fact that the Note was modified. The

"modification" urged by 3 Mark is not enforceable under California law because no new consideration was given. *See Selby v. Battley*, 309 P.2d 120 (1957). In addition, the terms discussed in the email dated February 14, 2002 from Mr. Abrams to Mr. Haynie were superseded by the plain, unambiguous terms of the executed Note, which do not provide that "payment of the Note would come only from revenue from the Film as it was received." Any prior negotiations cannot create an issue of fact regarding the actual terms of the written Note under California law.

The court also disagrees with 3 Mark that it has created a genuine issue of material fact regarding the parties' course of conduct. The Note specifies that "no delay or omissions on the part of [Mr. Abrams] in exercising any rights under, or failure to insist upon prompt compliance with the terms of this Note shall operate as a waiver of any right hereunder." The Note is not ambiguous, and parol evidence is inadmissible to vary the unambiguous terms of the Note. Mr. Abrams' agreement to accept payments after September 25, 2003, does not create a genuine issue of material fact regarding his *right* to payment in full under the Note. Nor did his failure to insist upon prompt compliance operate as a waiver of his *right* to payment.

Whatever 3 Mark's subjective intent regarding enforcement of the maturity date, it is not reflected in any written instrument. Under California law, evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language. *See Brant v. California Dairies, Inc.*, 4 Cal. 2d 128, 133, 48 P.2d 13 (1935). Accordingly, testimony provided by attorney Haynie regarding any prior subjective intent of 3 Mark regarding the maturity date cannot be used to alter the express terms of the written Note. *See* Cal. Civ. Proc. Code § 1856(a). The court simply cannot rewrite the Note for a more favorable outcome

for 3 Mark. "It is widely recognized that the courts are not at liberty to revise an agreement under the guise of construing it. Neither abstract justice nor the rule of liberal interpretation justifies the creation of a contract for the parties which they did not make themselves." *Hinckley v. Bechtel Corp.*, 116 Cal. Rptr. 33 (1974).

As for 3 Mark's contention that Mr. Abrams claim is time-barred, the court disagrees. 3 Mark contends that Mr. Abrams was required to bring his claim within six years of the breach because Mr. Abrams claims that the breach occurred on September 23, 2003, when the Balloon Payment was due.

The court applies Utah law on this issue because statutes of limitations are procedural in nature. *Kerry v. Southwire Co. &. Aff. Empl. Ben. Plan*, 324 F. Supp. 2d 1225, 1227 (D. Utah 2004). In this case, the court finds that 3 Mark's partial payments, made after September 23, 2003, tolled the statute of limitations. *See State Bank of Southern Utah v. Troy Hygro Sys., Inc.*, 894 P.2d 1270, 1276 (Utah Ct. App. 1985).

In *Troy Hygro*, the court explained that Section 78-12-44, the predecessor to Section 78B-2-113, "stands for the proposition that, in any case founded upon a contract, a new promise, part payment, or acknowledgment of a past debt or obligation acts to extend the applicable statute of limitations." 894 P.2d at 1276. Thus, the statute extends the limitations period "if the appropriate act occurs before the otherwise applicable limitations period initially expires." 894 P.2d at 1276.

Therefore, the six-year statute of limitations for an action on a written instrument began to run from the date of the last payment on the Note, which was on October 27, 2008. *See* Utah

9

Code Ann. §§ 78B-2-309(2); 78B-2-113(c).  Accordingly, Mr. Abrams' claim was brought well within the six-year limitations period and is not time-barred.

### III.  CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that Defendant James Abrams's Motion for Partial Summary Judgment Against 3 Mark Entertainment, LLC [Docket No. 21] is GRANTED, and Plaintiff 3 Mark Entertainment, LLC's Motion for Partial Summary Judgment [Docket No. 43] is DENIED.

Specifically, the court grants summary judgment against 3 Mark and in favor of Mr. Abrams on Count 1 of Mr. Abrams' Counterclaim, finding that the Note has been breached.  The Clerk of the Court is directed to enter judgment in favor of Mr. Abrams in the amount of $754,951.27, which is comprised of an unpaid principal balance in the sum of $667,220.07 and accrued but unpaid interest in the sum of $87,731.20 as of March 31, 2010.  The judgment will be supplemented at a later date with accrued interest after March 31, 2010, as well as Mr. Abrams' costs and attorneys' fees incurred in enforcing the obligations of 3 Mark under the Note.

The parties are directed to submit within 30 days a Status Report as to any remaining claims and a proposed briefing schedule regarding Mr. Abrams' attorneys' fees and accrued interest on the debt after March 31, 2010.

DATED this 3rd day of February, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge